United States Court of Appeals,

Fifth Circuit.

No. 95-10360.

Jan FORSYTH, Richard Kirks, Plaintiffs-Appellees Cross-Appellants,

v.

CITY OF DALLAS, TX, et al., Defendants,

CITY OF DALLAS, TX, Willard Rollins, Richard Hatler, Defendant-Appellant Cross-Appellee.

Aug. 16, 1996.

Appeals from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, and BARKSDALE and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Jan Forsyth and Richard Kirks were veteran undercover detectives in the Intelligence Unit of the Dallas Police Department ("DPD"). They alleged, both to superior officers in the DPD and later to the media, that several high-ranking DPD officers had participated in illegal wiretapping that interfered with a sensitive undercover investigation. After the *Dallas Morning News* ran two articles about their allegations, Forsyth and Kirks were transferred from the Intelligence Unit to night uniformed patrol. Forsyth and Kirks sued the City of Dallas ("the City"), and Officers Willard Rollins, Richard Hatler, and Mack Vines for retaliating against them in violation of 42 U.S.C. § 1983 and the Texas Whistleblower Act, TEX.CIV.STAT.ANN. art. 6252-16a (1992), because they had exercised their First Amendment rights to free speech. After a jury trial, the district court entered judgment against the City, Rollins, and Hatler, assessing a total of $175,000 in actual damages, $1 million in exemplary damages, and $153,470 in attorneys' fees and costs. The district court granted judgment as a matter of law to the defendants on Kirks's claim for lost wages. Both sides now appeal. We affirm the district court's judgment.

## I. BACKGROUND

At the time of this suit, Forsyth and Kirks were conducting an undercover drug "sting" in

1

conjunction with the Federal Bureau of Investigation and the Drug Enforcement Agency. Through a complex series of events related to the sting, a Dallas lawyer (Barr) and a politically influential Dallas businessman (Grogan) decided to level a complaint against Forsyth and Kirks with the DPD. The Internal Affairs ("IA") division of the DPD investigated the complaint and exonerated Forsyth and Kirks. A copy of the IA report was given to Forsyth.

From this report, Forsyth and Kirks formed a belief that several high-ranking officers within the DPD had engaged in illegal wiretapping. They complained about the alleged wiretaps to several superior officers in the DPD. Forsyth and Kirks contend their complaints were ignored.

Subsequently, Forsyth and Kirks turned the IA report over to their attorneys and instructed the attorneys to "go public" with their allegations that several high-ranking DPD officers had engaged in illegal wiretaps. On February 5, 1989, the *Dallas Morning News* ran a front page article about Forsyth's and Kirks's allegations. Two days later, Forsyth and Kirks were called to a meeting with their supervisors, Chief Rollins and Assistant Chief Hatler. Forsyth and Kirks testified that Rollins and Hatler told them to "stop the publicity" and threatened to transfer them from the Intelligence Unit if any further publicity ensued.

On February 13th, Forsyth and Kirks sued the City, Rollins, and several other officers over the illegal wiretaps ("the wiretapping suit").[1]

On February 14th, the *Dallas Morning News* ran an article about the wiretapping suit. The next day, Forsyth and Kirks were transferred from the Intelligence Unit to night uniformed patrol. Rollins and Hatler requested the transfer, and Vines approved it. Although Forsyth's and Kirks's pay was not reduced because of the transfers, they considered their new positions to be demotions. They had each begun their careers, thirteen and nineteen years previously, in night uniformed patrol.

Forsyth and Kirks filed the instant suit alleging that the City and Rollins, Hatler, and Vines had retaliated against them for complaining to superior DPD officers about the alleged wiretapping,

---

[1]The wiretapping suit was dismissed by the district court and the Fifth Circuit affirmed, *Forsyth v. Barr,* 19 F.3d 1527 (5th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

for publicizing their wiretapping allegations, and for filing the wiretapping suit, in violation of the First Amendment, § 1983, and the Whistleblower Act, *supra.* At trial, the jury found that (1) the officers' transfers constituted adverse employment actions; (2) Forsyth and Kirks were transferred because they had complained to superior officers about the alleged wiretaps and because they had publicized their allegations to the press; (3) Forsyth and Kirks were not transferred because they had filed the wiretapping suit; (4) Forsyth and Kirks had made the internal DPD wiretapping complaints in good faith; (5) the City had a *de facto* official policy of permitting the DPD to retaliate against whistleblowers; and (6) Vines was not liable for retaliating against Forsyth and Kirks.

As damages, the jury found that (1) Kirks had suffered $50,000 in past mental anguish, $25,000 in future mental anguish, $80,000 in past lost wages, and $675,000 in future lost wages; (2) Forsyth had suffered $75,000 in past mental anguish and $25,000 in future mental anguish; (3) $125,000 in exemplary damages each should be assessed against Rollins and Hatler under § 1983; and (4) $125,000 in exemplary damages was owed by the City under § 1983 and $750,000 under the Whistleblower Act.

The wages and the § 1983 exemplary damages against the City. The court entered judgment that (a) Rollins, Hatler, and the City were jointly and severally liable under § 1983 for Forsyth's and Kirks's mental anguish, or alternatively, the City was liable under the Whistleblower Act for those damages; (b) Rollins and Hatler were each liable under § 1983 for $125,000 in exemplary damages; and (c) the City was liable under the Whistleblower Act for $750,000 in exemplary damages. The district court also awarded the officers attorneys' fees and costs.

## II. DISCUSSION

A. Rollins and Hatler

The City, Rollins, and Hatler contend the district court erred in determining that the City and the officers had violated § 1983 by retaliating against Forsyth and Kirks because they had exercised their First Amendment rights to free speech. We will not address the troublesome question of the City's § 1983 liability because, as discussed later, the City is alternatively liable under the

3

Whistleblower Act. Rollins's and Hatler's § 1983 contentions are unconvincing.

Rollins and Hatler first assert that Forsyth and Kirks did not engage in conduct protected by the First Amendment. Contrary to the defendants' arguments, Forsyth and Kirks offered unrebutted testimony that they instructed their lawyers to publicize the wiretapping allegations. Further, it does not appear that Forsyth and Kirks were primarily motivated by personal and not public concerns in publicizing their allegations. At the time they "spoke out," Forsyth and Kirks had been exonerated by the IA report. Although the plaintiffs' disputes with DPD may have influenced their decision to speak out, the *Dallas Morning News* articles about their allegations discussed matters of public concern. The public would want to know of charges that influential citizens were taking advantage of their relationships with the police, even to the extent of conducting their own wiretaps. Moreover, balancing the significance of the speech against the employer's efficiency concerns, as *Connick*[2] requires, does not turn out favorably for Rollins and Hatler. No defense witness testified that Forsyth's and Kirks's publication of the wiretapping allegations undermined the DPD's operations. To the contrary, those witnesses testified that the newspaper articles did not affect the Department's efficiency.

Second, Rollins and Hatler contend that the evidence was insufficient to prove that they transferred Forsyth and Kirks because of their complaints internally and then through the media about the alleged wiretapping. Forsyth and Kirks testified that, two days after the first *Dallas Morning News* article appeared, Rollins and Hatler warned them to "stop the publicity" and threatened to transfer them if further publicity ensued. The day after the second newspaper article appeared, Rollins and Hatler transferred the plaintiffs.

Third, Rollins and Hatler contend that the transfers did not deprive Forsyth and Kirks of any cognizable property right or privilege because their pay was not reduced. This court has already rejected that argument under strikingly similar facts. In *Click v. Copeland,* 970 F.2d 106 (5th Cir.1992), two sheriff deputies were transferred from the county's law enforcement section to

[2]*Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

4

positions as jail guards because they had engaged in conduct protected by the First Amendment. The employees suffered no reduction in pay. However, they contended their transfers were demotions because the jail guard positions were much less desirable then their previous ones. This court agreed that their transfers constituted demotions in violation of § 1983. As this court explained:

> Copeland maintains that his transfer of Click and Falcon to the jail was not a demotion because neither received a decrease in pay; in fact Falcon received a raise. Money alone, however, does not buy happiness. The *Perry* Court spoke of "benefits" generally, not just salary [citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697-98, 33 L.Ed.2d 570 (1972) ]. The evidence adduced at trial strongly supports the proposition that jobs in the jail are not as interesting or prestigious as jobs in the law enforcement section.... In short, Click and Falcon's transfers could be considered demotions even though they suffered no reduction in salary.

970 F.2d at 109. *See also Fyfe v. Curlee,* 902 F.2d 401, 404 (5th Cir.), *cert. denied,* 498 U.S. 940, 111 S.Ct. 346, 112 L.Ed.2d 310 (1990) (holding that a transfer to a less desirable but equal paying job constituted a demotion).

*Click* does not support the proposition that every transfer of job duties without a decrease in salary is necessarily a demotion because it occurs following a plaintiff's exercise of protected speech; a plaintiff's subjective perception that a demotion has occurred is not enough. Here, however, the evidence revealed that the Intelligence Unit positions were more prestigious, had better working hours, and were more interesting than night patrol. Moreover, few officers voluntarily transferred from the Intelligence Unit to night patrol and other officers had been so transferred as punishment.

 Fourth, Rollins and Hatler contend that the evidence was insufficient for a reasonable jury to conclude that Forsyth and Kirks suffered $100,000 and $75,000 respectively in emotional anguish. We disagree. Forsyth testified that she suffered depression, weight loss, intestinal troubles, and marital problems, that she had been sent home from work because of her depression, and that she had to consult a psychologist. Kirks testified that he suffered depression, sleeplessness, and marital problems. Judgments regarding noneconomic damages are notoriously variable; we have no basis to reverse the jury's evaluation.

 Fifth, Rollins and Hatler contend the evidence was insufficient to support the jury's award of $125,000 in exemplary damages against each of them. We disagree; Forsyth and Kirks presented

sufficient evidence from which a reasonable jury could conclude that Rollins and Hatler acted with malice or a reckless or callous disregard for the plaintiffs-appellees' rights. *See Wells v. Hico Indep. Sch. Dist.,* 736 F.2d 243, 259 (5th Cir.1984), *cert. dismissed,* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985). Rollins and cising their First Amendment rights, yet the evidence, viewed in the light most favorable to the verdict, strongly corroborates the jury's finding that they did so. Moreover, the $125,000 awards are not excessive: each is less than Forsyth's and Kirks's actual damages.

Sixth, Rollins and Hatler contend the jury's finding that Vines was not liable is inconsistent with its finding that they were liable. We disagree. Vines testified that he had approved Forsyth's and Kirks's transfers based on the information he received from Rollins and Hatler and that he routinely approved transfers recommended by superior officers. A reasonable jury could find that Vines did not retaliate against Forsyth and Kirks because he was not personally involved in their dispute and signed the transfer papers based on information from the codefendants. The jury's finding that Rollins and Hatler had constitutionally offensive motives for the transfers does not imply or impute the same disposition to Vines.

Finally, Rollins and Hatler contend the district court erred in rejecting their defense of qualified immunity. *Click* held, however, that "[t]he law was established clearly enough in this circuit in January 1988 that a reasonable officer should have known that if he retaliated against an employee for exercising his First Amendment rights, he could not escape liability by demoting and transferring the employee rather than discharging him." 970 F.2d at 111. The retaliatory transfers at issue here took place a year later.

In sum, we affirm the district court's judgment against Rollins and Hatler under § 1983 and the accompanying damage awards for violating Forsyth's and Kirks's First Amendment rights.

B. The City of Dallas

The district court found that the City was jointly and severally liable with Rollins and Hatler for $175,000 in mental anguish damages under § 1983, or alternatively, the City was liable under the

Whistleblower Act for those damages. The City now appeals its liability under both statutes. We determine that the City is liable under the Whistleblower Act.

That Act provides:

> A state or local governmental body may not suspend or terminate the employment of, or otherwise discriminate against, a public employee who reports a violation of law to an appropriate law enforcement agency if the employee report is made in good faith.

TEX.REV.CIV.STAT.ANN. art. 6252-16a § 2 (1992).[3] To establish a whistleblower claim, an employee must demonstrate that (a) the employee reported an alleged violation of law to an appropriate law enforcement authority; (b) the employee made the report in good faith; (c) the employer took an adverse employment action against the employee because the employee made the report; and (d) the employer's action proximately caused the employee's injuries. *Wichita County v. Hart,* 892 S.W.2d 912, 920-24 (Tex.App.—Austin 1994), *reversed on other grounds,* 917 S.W.2d 779 (Tex.1996).

In the instant case, it is undisputed that Forsyth and Kirks reported alleged violations of law in good faith to an appropriate law enforcement agency. We have already determined that the making of the reports led to plaintiffs' transfers and that Forsyth and Kirks were thereby damaged. The only disputed issue is whether the Whistleblower Act prohibited the DPD from transferring Forsyth and Kirks.

The City contends that the Whistleblower Act did not prohibit the transfers; it argues that the transfers do not constitute demotions because Forsyth and Kirks suffered no decrease in pay, and that, in any case, demotions are not covered by the Act. We reject both of the City's arguments. First, the evidence established that Forsyth's and Kirks's transfers constituted demotions. Second, Texas courts have held that the phrase "or otherwise discriminate against" in the Act prohibits an employer from demoting a whistleblowing employee. *City of Brownsville v. Pena,* 716 S.W.2d 677, 680 (Tex.App.—Corpus Christi 1986); *City of Beaumont v. Bouillion,* 873 S.W.2d 425, 445 (Tex.App.—Beaumont 1993), *reversed on other grounds,* 896 S.W.2d 143 (Tex.1995). Further, we

---

[3]In September 1993, the Whistleblower Act was amended and recodified, TEX.GOVT.CODE §§ 554.001-.009 (West Supp.1996).

7

point out that the Texas legislature has since amended the Whistleblower Act to clarify that it covers transfers. TEX.GOVT.CODE §§ 554.001-.002 (West Supp.1996) (defining "adverse employment actions" to include transfers).

The City next challenges the jury's $750,000 exemplary damage award. Section 4(a)(2) of the Whistleblower Act[4] provides that a governmental employer can be liable for exemplary damages if the employer acts intentionally, fraudulently, maliciously, or with gross negligence. TEX.REV.STAT.ANN. art. 6252-16a, § 4(a)(2); *City of Ingleside v. Kneuper,* 768 S.W.2d 451 (Tex.App.—Austin 1989), *error denied* (Oct. 25, 1989). Texas courts have construed the term "employer" to hold the governmental entity vicariously liable for the acts of its employees. *E.g., Tex. Dept. of Human Serv. v. Green,* 855 S.W.2d 136, 142-43 (Tex.App.—Austin 1993), *error denied* (Feb. 2, 1994) (Whistleblower Act waives the government's sovereign immunity and governmental agency may be vicariously liable for acts of low-level supervisors); *City of Houston v. Leach,* 819 S.W.2d 185, 200-01 (Tex.App.—Houston, 14th Dist.1991) (City of Houston held vicariously liable under the Whistleblower Act but not under 42 U.S.C. § 1983). The evidence here was sufficient to impose punitive damage liability on the City for the conduct of Rollins and Hatler. Moreover, we reject the City's argument that the amount of exemplary damages assessed—$750,000—was excessive. That amount is less than four times the officers' actual damages.

C. Other Issues

Kirks cross-appeals, contending that the district court erred in granting judgment as a matter of law to the appellants on his claim for lost wages. But the evidence was insufficient to support the jury's award. Kirks only speculated during his testimony that his no-hire status with the DPD would make it difficult for him to obtain another job. He never testified that he actually lost work because of that status.

Finally, both sides dispute the amount of attorneys' fees awarded plaintiffs under § 1983 and

---

[4]Section 4(a)(2) provides that "[a] public employee who sues under this Act may recover ... exemplary damages."

§ 4(a)(4) of the Whistleblower Act.  We find no abuse of discretion.  The district court reviewed the attorneys' billing records in accordance with the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), and reduced both the hourly rates and the billable hours claimed by Forsyth's and Kirks' attorneys, but the final award was hardly unreasonable.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.