**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 96-11304

JOHN G. DENTON and PAULA J. SAVAGE,

Plaintiffs-Appellees-Cross-Appellants,

VERSUS

JAMES MORGAN, Commissioner, Juvenile Board of Comanche County, Et Al.

Defendants

JOHN WEAVER, Commissioner, Juvenile Board of Comanche County, Texas; ERNIE REINKE, Commissioner, Juvenile Board of Bosque County, Texas; CHARLES GARRETT, Commissioner, Juvenile Board of Hamilton, County, Texas; JUVENILE PROBATION BOARD OF COMANCHE COUNTY; JUVENILE PROBATION BOARD OF BOSQUE COUNTY; JUVENILE PROBATION BOARD OF HAMILTON COUNTY,

Defendants-Appellants-Cross-Appellees.

Appeals from the United States District Court
for the Northern District of Texas

March 23, 1998

Before JOLLY, DUHÉ, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

The Plaintiffs, John G. Denton and Paula J. Savage, sued the Defendants, Judges Weaver, Reinke, and Garrett, Commissioners of the Juvenile Probation Boards of Bosque, Comanche, and Hamilton Counties, Texas, alleging violations of the First Amendment to the United States Constitution, enforceable under 42 U.S.C. § 1983, and

the Texas Whistleblower Act, Tex. Rev. Civ. Stat. Ann. art. 6252-16A § 2(Vernon Supp. 1992)(repealed)(current version at Tex. Govt. Code. § 544.002 (Vernon Supp. 1996)).  The Defendants appeal from an order of the district court denying Defendants' Motion for Judgment as a Matter of Law on the Plaintiffs' First Amendment claims.  The Plaintiffs, as Cross-Appellants, appeal from an order of the district court ordering remittitur and granting Defendants' Motion for Judgment as a Matter of Law on Denton's Texas Whistleblower claim.  After consideration of the briefs and the record on appeal, we affirm the district court.

I.

Plaintiff, John G. Denton, served as Chief Probation Officer for the Juvenile Probation Boards of Bosque, Comanche, and Hamilton counties from May 1983 until his discharge in January 1992. Plaintiff, Paula J. Savage, served as a juvenile probation officer for the three counties from January 1990 until she was discharged in September 1991.

In January 1991, the Plaintiffs were assigned the case of "W.D.A.," a juvenile recently released from Belton Detention Center.  Although W.D.A. had been released from the detention center because the center had closed, the juvenile was still subject to a continuing detention order.  As W.D.A.'s juvenile probation officers, the plaintiffs attempted to secure educational services for W.D.A. in the Clifton Independent School District

2

("Clifton I.S.D."), located in Bosque County.  After a meeting attended by the plaintiffs, Clifton I.S.D. officials, a representative from the Texas Department of Mental Health and Mental Retardation, the Clifton police chief, Judge Reinke, and a county attorney, the juvenile was denied admission to Clifton I.S.D. because of the continuing detention order.  Following the meeting, the county attorney issued an order to take W.D.A. into custody and detain him for not completing his stay at his previous placement.  W.D.A. was later released to his father, but remained under a detention order that prohibited him from attending school. Judge Reinke, Commissioner of the Juvenile Board of Bosque County subsequently committed W.D.A. to the Texas Youth Commission. Believing that the actions taken by Clifton I.S.D. were illegal, the plaintiffs wrote a letter to the Texas Education Agency ("TEA") complaining that W.D.A.'s rights under the Texas Education Code and the Federal Individuals with Disabilities Education Act had been violated.

According to Denton and Savage, the Defendants were angered and embarrassed that the Plaintiffs had gone "over their heads" by writing the letter to the TEA. Following disclosure of the TEA letter, the judges unanimously voted in September 1991 to discharge Savage and demote Denton from chief probation officer.  In January 1992, the judges voted to terminate Denton.  According to the Defendants, however, the Plaintiffs were fired due to inappropriate travel expense reports and continuing budget problems.  Denton sued Judge James Morgan, Commissioner, Juvenile Board of Comanche

County, Texas,[1] and Judges Ernie Reinke, John Weaver, and Charles Garrett, Commissioners of the Juvenile Boards of Bosque, Comanche and Hamilton Counties, Texas, respectively (collectively "Defendants"), alleging violations of the First Amendment under 42 U.S.C. § 1983, and the Texas Whistleblower Act. Plaintiff Savage joined in the First Amendment claim against Defendants. The Plaintiffs alleged that they were unlawfully discharged by Defendants in retaliation for writing the letter to the TEA complaining about the failure of the Clifton I.S.D. to provide educational services to W.D.A.

After a trial on the merits, the jury found that the Defendants terminated the Plaintiffs in retaliation for reporting an alleged illegality and speaking out on a matter of public concern. Thus, the jury found liability on the Plaintiffs' First Amendment claims and Denton's Whistleblower claim against the Juvenile Probation Boards of Bosque, Comanche, and Hamilton counties. The jury awarded Denton $117,876 in past lost wages and $111,000 for lost pension. The jury awarded Savage past lost wages of $19,600. At trial, however, the Plaintiffs' expert economist had only testified that Savage's lost wages totaled $8,640 and Denton's past lost wages totaled $24,376 and lost pension totaled $82,620.

Following trial, the Defendants moved for judgment as a matter of law on the Plaintiffs' First Amendment and Whistleblower claims.

---

[1] Defendant Morgan, Commissioner, Juvenile Board of Comanche County did not appeal the judgment.

4

The trial court granted the Defendants' Rule 50(b) renewed motion for judgment as a matter of law on Denton's Whistleblower claim, denied the Defendants' motion for judgment as a matter of law on the Plaintiffs' First Amendment claim, and ordered remittitur of the damages to the amount for which the Plaintiffs' expert testified.

## II.

The Defendants contend that the district court erred by submitting to the jury liability issues regarding the individual county juvenile boards because the Plaintiffs were actually employed by the 220th Judicial District Juvenile Board, composed of the juvenile boards of Bosque, Comanche, and Hamilton counties. The Defendants contend that the individual juvenile boards of Bosque, Comanche, and Hamilton have not functioned since 1988, when they ceased to function and were replaced by the 220th Judicial District Juvenile Board created by statute. The Defendants assert that the membership of the 220th Judicial District Juvenile Board consists of Judges Weaver, Reinke, and Garrett, with Judge Morgan serving as chairman. The district court, however, found that the 220th Judicial District Juvenile Board was not a legal entity.

Although the three county juvenile boards may have operated as a single unit, there is no statutory authority for such joint operation. *See* Tex. Hum. Res. Code Ann. § 152.0031. While Texas law allows some county juvenile boards to operate jointly, the counties of Bosque, Comanche, and Hamilton are specifically

5

excluded from such joint operation. *See id.* §§ 152.0031; 152.0036; 152.0241; 152.0531; and, 152.1031.  In any event, the name used to describe the Plaintiffs' employer would not alter the Defendants' liability because the membership of the hypothetical 220th Judicial District Juvenile Board consists of the three individual county boards.  The judges, who represent the county juvenile boards, voted unanimously to terminate the Plaintiffs.  Thus, liability of the 220th Judicial District would be imputed to each of the individual county boards.

III.

The Defendants contend that the district court erred by denying their Rule 50(b) renewed Motion for Judgment as a Matter of Law and Motion for New Trial on the Plaintiffs' First Amendment claims.  In support of this contention, the Defendants argue, inter alia, the district court erred by finding as a matter of law that the Plaintiffs' speech involved a matter of public concern; the Plaintiffs failed to establish that the First Amendment deprivations were the result of a policy, practice, or custom of the Juvenile Boards; and there was no evidence, or alternatively insufficient evidence, to support the jury's verdict.  We review de novo the question of whether a plaintiff's allegations state a valid claim of retaliation for the exercise of free speech protected by the First Amendment.  *See Caine v. Hardy,* 943 F.2d 1406, 1415 (5th Cir. 1991)(en banc).

First, the Defendants assert the district court erred by

finding, as a matter of law, that the speech involved a matter of public concern. In order for speech by a public employee to enjoy constitutional protection from retaliation by the public employer, the speech must involve a matter of public concern.[2] *See Connick v. Myers*, 461 U.S. 138, 147 (1983); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1050 (5th Cir. 1996). To rise to the level of public concern, the speech at issue must have been made primarily as a citizen rather than as an employee addressing matters only of personal concern. *See Thompson v. City of Starkville, Miss.,* 901 F.2d 456, 465 (5th Cir. 1990). As the Court in *Connick* recognized, "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick*, 461 U.S. at 146. Whether an employee's speech addresses a matter of public concern, rather than a matter of personal concern, must be determined by the content, form, and context of a given statement, as revealed by the entire record. *See id.* at 147-48.

The Defendants argue that the letter to the TEA did not involve a matter of public concern because the Plaintiffs failed to

---

[2] This court has established a three part test to determine whether speech by a public employee is constitutionally protected from retaliation by a public employer. First, the speech must involve a matter of public concern. Second, the public employee's interest in commenting on matters of public concern must outweigh the public employer's interest in promoting efficiency. Third, the employee's speech must have motivated the decision to discharge the employee. *See Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 460 (5th Cir. 1990).

disclose W.D.A.'s continuing detention order, which made the juvenile ineligible to attend Clifton I.S.D. schools, and the Plaintiffs had hidden allegedly self-serving motives in writing the letter. The Defendants' argument presumes that the speech in question must be completely accurate and the speaker must not have any self-interest in the speech, before such speech receives constitutional protection. Neither the accuracy of the speech, nor the motivation of the speaker, plays a role in determining whether the expression involves a matter of public concern. *See Gonzalez v. Benavides*, 774 F.2d 1295, 1300-01 (5th Cir. 1985)("We do not read *Connick*, however, to exclude the possibility that an issue of private concern to an employee may also be an issue of public concern."). *See also Rode v. Dellarciprete*, 845 F.2d 1195, 1202 (3d Cir. 1988) ("Dismissing [the plaintiff's] speech as unprotected merely because she had a personal stake in the controversy fetters public debate on an important issue because it muzzles an affected public employee from speaking out."). Therefore, the only relevant inquiry is whether the Plaintiffs' letter to the TEA reporting perceived wrongdoing on the part of Clifton I.S.D. addresses a matter of concern to the community.

The Plaintiffs' letter complains to the TEA about perceived illegal action on the part of Clifton I.S.D. officials in denying educational services to a disabled juvenile. The Plaintiffs believed that the school district's refusal to offer W.D.A. admission to the public school system violated the Texas Education Code and the Federal Individuals with Disabilities Education Act.

8

This court has held that speech reporting official misconduct, wrongdoing, or malfeasance on the part of public officials involves matters of public concern. *See Wilson v. UT Health Center*, 973 F.2d 1263, 1269 (5th Cir. 1992)(reporting sexual harassment of superiors)*; Schultea v. Wood*, 27 F.3d 1112, 1120 (5th Cir. 1994), superseded on other grounds, 47 F.3d 1427 (1995)(en banc)(reporting suspected criminal activity of city council member)*; Brawner v. City of Richardson, Texas*, 855 F.2d 187, 192 (5th Cir. 1988) (reporting possible police misconduct). As the letter to the TEA reported perceived wrongdoing on the part of public officials, we hold that letter clearly addressed a matter of public concern. Thus, the district court did not err by finding the letter involved a matter of public concern as a matter of law.

Second, the Defendants contend that the district court erred by submitting the First Amendment claim to the jury because the Plaintiffs failed to establish the First Amendment deprivation resulted from a policy, practice or custom of the juvenile boards. The defendants assert that in order to establish liability under 42 U.S.C. § 1983, a plaintiff must establish the alleged constitutional violation occurred pursuant to a policy, practice or custom of a government entity. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978)*; Jett v. Dallas Independent School Dist.*, 7 F.3d 1241, 1244-45 (5th Cir. 1993). By making this argument, the Defendants fail to acknowledge a second recognized avenue for establishing § 1983 liability, namely, that decisions by final policy-making bodies or officials constitute

9

official government policy. *See Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986). In this regard, the Court in *Pembaur* noted that for purposes of § 1983 liability, "[L]iability attaches only where the decision maker possesses final authority to establish [government] policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481. Whether the government decision maker has final policy-making authority is a question of state law to be resolved by the court. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988); *Pembaur,* 475 U.S. at 483; *Jett*, 7 F.3d at 1244.

The Defendants claim the individual judges could not be final policy makers because their respective counties did not employ Denton and Savage, but that the 220th Judicial District Juvenile Board was the Plaintiffs' actual employer. As we have already held, the "220th Juvenile Board" has no basis in Texas law. Consequently, any action by the alleged "220th Juvenile Board" must be imputed to the individual county juvenile boards. In any event, each county took official action against the Plaintiffs because the judges, in their capacity as representatives of the individual county juvenile boards, unanimously voted to terminate Denton and Savage. Therefore, the individual juvenile boards of Bosque, Comanche and Hamilton counties are liable for any illegal employment action which results from their official acts. It appears from the record that the individual county juvenile boards have final policy-making authority regarding the hiring and firing of juvenile probation officers. *See, e.g.,* Tex. Hum. Res. Code Ann. § 152.0008 (Vernon 1990) (providing that juvenile probation

10

officers serve at the pleasure of the appointing authority).  No other governmental body has any authority over the employment decisions made by the county juvenile boards.  Thus, as the ultimate authority in the decision to terminate the Plaintiffs, the individual county juvenile boards of Bosque, Comanche and Hamilton must bear the consequences for any violation of the Plaintiffs' constitutional rights.

Third, the Defendants claim the district court erred by denying their rule 50(b) motion for judgment as a matter of law because there is no evidence, or alternatively insufficient evidence, to support the jury's verdict regarding retaliation in violation of the Plaintiff's First Amendment rights.  The Defendants argue that the evidence proves the judges' decision to terminate was based on the Plaintiffs' improper travel vouchers and insubordination, and not the TEA letter.  The jury, however, found that the TEA letter was the reason for the Plaintiffs' termination and imposed liability on the Defendants for violations of the First Amendment.

When reviewing the district court's denial of a motion for judgment as a matter of law challenging the legal sufficiency of the evidence, the appellate court applies the same standard to review the verdict that the district court used in first passing on the motion.  *See Hiltgen v. Sumrall*, 47 F.3d 695, 700 (5th Cir. 1995)(citing *Bridges v. Groendyke Transport, Inc.*, 553 F.2d 877 (5th Cir. 1977)).  Therefore, in due deference to the jury's determination, a verdict must be upheld unless "there is no legally

11

sufficient evidentiary basis for a reasonable jury to find" as the jury did. *See id.* (citing Fed.R. Civ. P. 50(a)(1)). In this regard, the court has stated:

> A jury may draw reasonable inferences from the evidence, and those inferences may constitute sufficient proof to support a verdict. On appeal, we are bound to view the evidence and all reasonable inferences in the light most favorable to the jury's determination. Even though we might have reached a different conclusion if we had been the trier of fact, we are not free to reweigh the evidence or to reevaluate credibility of witnesses. We must not substitute for the jury's reasonable factual inferences other inferences that we may regard as more reasonable.

*Rideau v. Parkem Indus. Services, Inc.*, 917 F.2d 892, 897 (5th Cir. 1990).

After reviewing the record and viewing the evidence and reasonable inferences in the light most favorable to the jury's determination, we hold that the Plaintiffs established a legally sufficient evidentiary basis for a reasonable jury to find that the TEA letter motivated the decision to discharge the Plaintiffs. Specifically, Judge Morgan testified that he was upset and distressed by the TEA letter. Judge Morgan further testified that the letter was a factor in the Plaintiffs' termination because he was concerned that it showed a lack of cooperation with the board. Additionally, Judge Reinke testified that he was very upset and concerned by the TEA letter. From this testimony, the jury could infer that the TEA letter motivated the decision to terminate the Plaintiffs. While each of the judges testified that the Plaintiffs' violation of the travel policy was the actual reason for the termination, the jury was free to disregard this testimony

12

as a mere pretext for the real reason behind the Plaintiffs'
termination.  Consequently, the district court did not err by
denying the Defendants' motion for judgment as a matter of law.


IV.

The Plaintiffs claim the district court erred by granting the
Defendants' motion for judgment as a matter of law on Denton's
Texas Whistleblower Act claim.  Specifically, Denton disputes the
district court's interpretation of the statute as precluding a
claim by a public employee when the protected speech concerns a
violation of the law by a third party, not the Plaintiff's
employer.  Because Denton reported a perceived violation by Clifton
I.S.D. and not the three defendant juvenile boards, the court
granted the Defendants' motion for judgment as a matter of law.  We
review de novo the district court's determination of state law.
*See Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991).

At the time of Denton's termination, the Texas Whistleblower
Act provided, "A state agency or local governmental body may not
suspend or terminate the employment of, or otherwise discriminate
against, a public employee who reports a violation of law to an
appropriate law enforcement authority if the employee report is
made in good faith." Tex. Civ. Stat. Ann. art. 6252-16A § 2 (Vernon
Supp. 1992)(repealed 1993)(current version at Tex. Govt. Code. §
544.002 (Vernon Supp. 1996)).  The Plaintiffs argue that the plain
language of the former version of the Whistleblower Act supports
the jury's verdict because there was no express requirement in the

13

statute that the reported violation of the law must have been committed by the whistleblower's employer. Although not expressly required, the statute has been universally interpreted to require the whistleblower's employer to have committed the reported violation. *See Davis v. Ector Cty., Texas*, 40 F.3d 777, 786 (5th Cir. 1994); *Harris Cty. Precinct Four Constable Dept. v. Grabowski,* 922 S.W.2d 954, 955 (Tex. 1996)(stating that the Whistleblower Act protects employees who report violations by their employer); *Stinnett v. Williamson Cty. Sheriff's Dept.*, 858 S.W.2d 573, 575 (Tex.App.--Austin 1993, writ denied) ("Traditionally, the Whistleblower Act has been applied to public employees who are fired in retaliation for reporting their employer's violations of law that are detrimental to the public good or society in general."); *Castañeda v. Texas Dept. of Agriculture*, 831 S.W.2d 501, 503-504 (Tex.App.--Corpus Christi 1992, writ denied)(interpreting the phrase "reports a violation of the law" to include any disclosure of information regarding a public servant's employer tending to directly or circumstantially prove a violation of the law). Thus, it appears that in 1992, Texas law did not recognize a cause of action where the reported violation of law did not concern the whistleblower's employer. Denton fails to cite any authority where the statute is applied to protect whistleblowers who report violations of the law by third parties. Although the plain language of the statute does not expressly require the whistleblower's employer to have committed the reported violation, we cannot disregard the overwhelming authority to the contrary.

14

Additionally, Denton points to the recent amendments to the Whistleblower Act, which add the requirement that the government employer commit the violation, as proof that the earlier version of the Act permitted claims by a whistleblower who reported any violation of the law, including violations by third parties.[3] By amending the statute, Denton insists that the Texas Legislature intended to narrow the scope of the law to permit only claims by public employees who report violations of the law by their employers. Although the Plaintiff presents a plausible interpretation, the more likely reason for the amendment is that the Texas Legislature intended to clarify the law to accord with current interpretations. Consequently, we hold that the district court did not err by granting the Defendants' Motion for Judgment as a Matter of Law on Denton's Texas Whistleblower Act claim.

V.

The Plaintiffs contend that the district court erred by improperly granting the Defendants' Motion for Remittitur. The jury awarded Savage past lost wages of $19,600 and Denton $117,876 in past lost wages, $110,000 for lost future wages, and $110,000

---

[3] In 1995, the Texas Whistleblower Act was amended to provide:

> A state or local governmental entity may not suspend or terminate the employment of, or take adverse personnel action against, a public employee who in good faith reports *a violation of law by the employing governmental entity* or another public employee to an appropriate law enforcement authority.

Tex. Govt. Code § 554.002(a) (Vernon Supp. 1996)(emphasis added).

15

for lost pension. After finding that the jury awards were insufficiently supported by the evidence, the district court remitted the damages to the amount which the Plaintiffs' expert had testified at trial. We review the district court's order of remittitur for abuse of discretion. *See Eiland v. Westinghouse Electric Corp.*, 58 F.3d 176, 183 (5th Cir. 1995). We determine the size of the remittitur in accordance with the "maximum recovery rule" by reducing the verdict to the maximum amount the jury could have properly awarded. *Id.* (citing *Dixon v. International Harvester Co.,* 754 F.2d 573, 590 (5th Cir. 1985)). Under Texas law, remittitur orders should be upheld only when the reviewing court determines that the evidence was factually insufficient to support the jury verdict. *See Larson v. Cactus Utility Co.*, 730 S.W.2d 640 (Tex. 1987).

At trial, the Plaintiffs' economic expert, Dr. Berkman, testified that Denton's damages were as follows: lost income from January 1992 until April 1993, $24,376.00; loss of future income, $112,260.00; and lost pension, $82,620.00. Dr. Berkman testified that Savage's actual lost income totaled $8,640.00, and lost pension in the amount of $42,294.[4] Following deliberations, the jury awarded Denton $117,876 in past lost wages, $110,000 for lost pension, and $110,000 in lost future wages. The jury awarded Savage $19,600 in lost wages. The Plaintiffs argue that the

---

[4] On cross-examination, however, Dr. Berkman testified that the amount of Savage's lost pension was no longer valid because her new employment provided better pension benefits than her former job.

16

difference between the expert testimony and the jury verdict merely reflects the amount of economic loss suffered by the Plaintiffs from the time Dr. Berkman prepared his report in 1993 and the time of trial in 1996. Therefore, the Plaintiffs contend that the jury merely updated the amounts. The jury, however, was not given enough information to update the amount of economic loss because Dr. Berkman did not provide the jury with an adequate basis for updating the numbers. When asked how he arrived at the amount of damages for Denton, Dr. Berkman testified that he looked at the Plaintiff's employment history, income documents, and "where he could have been had he remained employed." Furthermore, when asked whether the numbers had changed much from 1993 until 1996, Dr. Berkman testified in the affirmative, but did not wish to speculate to a current amount of damages. Any attempt to update the amount of damages would have been purely speculative because the jury was not provided with enough information to engage in the type of economic forecasting utilized by Dr. Berkman. *See Haley v. Pan American World Airways, Inc.*, 746 F.2d 311, 316 (5th Cir. 1984) ("A damage award cannot stand when the only evidence to support it is speculative or purely conjectural.").

In any event, the amount of damages awarded by the jury does not correlate to the three year difference between the expert report and trial. The evidence produced at trial indicates that Savage immediately located substitute employment. Therefore, there is no evidentiary basis for awarding $19,600 in past lost wages, when Savage only accrued $8,640 in actual past lost wages. As for

17

Denton, although he remained unemployed at the time of trial, any amount awarded for future lost wages included the three years not covered by the report because Dr. Berkman calculated the future lost wages from 1993 forward. Consequently, the district court did not abuse it discretion when it found that the evidence was insufficient to support the amount of the jury verdict. Furthermore, the district court remitted the amount of damages to the "maximum amount the jury could have properly awarded" because the verdict was only reduced to the amount established by the evidence.

V.

For the foregoing reasons, the order of the district court denying the Defendants' Motion for Judgment as a Matter of Law on the Plaintiffs' First Amendment claims; granting the Defendants' Motion for Judgment as a Matter of Law on Plaintiff Denton's Texas Whistleblower Act claim; and granting the Defendants' Motion for remittitur is

AFFIRMED.

18