**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 99-11194

---

YOLANDA N BROWN,

Plaintiff-Appellee,

VERSUS

RIO PETROLEUM, INC, ET AL

Defendants

RIO PETROLEUM, INC; JOHN WALKER, JR

Defendants-Appellants.

---

Appeal from the United States District Court
For the Northern District of Texas

(2:97-CV-440)

---

April 12, 2001

Before DUHÉ and PARKER, Circuit Judges and LINDSAY, District Judge.[*]

PER CURIAM:[**]

---

[*]District Judge of the Northern District of Texas, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

Defendants Rio Petroleum, Inc. and John Walker, Jr. appeal the the district court's denial of Defendants' motions for judgment as a matter of law, for new trial and for remittitur, as well as the damages awarded by the jury to Plaintiff Yolanda N. Brown. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Brown was employed by Rio Petroleum from January 1992, to September 1996, to perform receptionist and clerical duties. Rio Petroleum is a small company in Amarillo, Texas, engaged in the business of exploration, production, and sale of oil and natural gas. Brown was the only African-American in an office staff of nine (and later in Brown's tenure, ten) employees. Brown received raises and incentive bonuses, participated in company social functions, and enjoyed good relations with her supervisors and co-workers at the beginning of her employment.

Over time, her clerical job duties were assigned to other employees and she was reassigned to perform janitorial and yard maintenance tasks. She also suffered humiliations including having mail repeatedly dropped on her from a second floor balcony, being questioned about her and her children's participation in Juneteenth and Martin Luther King, Jr. Day celebrations, and being referred to at work as "our little Black nanny."[1]

---

[1] Rio Petroleum argues that the comments about Brown's choice to celebrate certain holidays and the label "little Black nanny" should not be weighed as evidence of racial bias because they were "stray remarks." A reasonable jury may have concluded that the

Brown was given a written separation notice in September 1996, signed by Rio Petroleum Vice President Carol Pierce that stated:

> In your four years of employment with Rio, we have endeavored to have you perform various tasks. However, other than arranging birthday/party celebrations and attending receptionist activities during conference meetings, you failed to successfully perform and master tasks given you. These inabilities resulted in the transference of work and responsibilities to others. Recall that I have had several conversations with you in the past regarding your job performance, and I have seen no improvement. Therefore, we must terminate your employment effective immediately.

Brown brought suit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e (1994), alleging that Rio Petroleum discriminated against her on the basis of race and sex. Brown also asserted causes of action against Rio Petroleum President Barrett Pierce for sexual harassment and intentional infliction of emotional distress, and against Rio Petroleum Vice

---

remarks concerning the celebrations indicated racial animus and that the speakers (Walker and Barrett Pierce) exerted influence over the decisionmaker, Carol Pierce. The remarks were therefore circumstantial evidence of racial discrimination by Rio Petroleum which the jury could consider. *See generally Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 2000 WL 1785541 at *5-6 (5th Cir. 2000)(explaining that *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097 (2000) modified Fifth Circuit stray remark jurisprudence so that remarks which evidence discriminatory animus made by a speaker who has leverage or influence over the decisionmaker may be considered circumstantial evidence of discrimination by an employer). On the other hand, the "little Black nanny" label was coined by a co-worker who did not exert such influence at Rio Petroleum. We therefore agree that a co-worker's reference to Brown as a little Black nanny was a stray remark, which did not evidence bias on the part of Rio Petroleum decisionmakers.

President John Walker, Jr. for assault and battery.

The case was tried to a jury. At the close of Brown's case-in-chief, the district court granted judgment as a matter of law to Defendants on all claims except Brown's allegation that she had been subjected to disparate treatment on account of race with regard to conditions of employment other than pay and the allegation that Walker had committed assault and battery against her by dropping mail on her. The jury returned a verdict in Brown's favor on the two remaining claims and awarded her $60,000 for mental anguish on her disparate treatment claim, as well as $15,000 for mental anguish and $25,000 in exemplary damages on the assault and battery claim against Walker. Defendants filed motions for judgment as a matter of law or for new trial on Brown's remaining claims, which the district court denied. The district court granted in part and denied in part Defendants' motion for remittitur, reducing the jury verdict against the company to $50,000, the applicable statutory cap.

## II. ANALYSIS

### A. Standard of review

Rio Petroleum appeals the district court's denial of its motion for judgment as a matter of law, in which it alleged that the trial evidence was not sufficient to support a verdict for Brown on her disparate treatment claim. We review that denial *de novo*, *Sharp v. City of Houston*, 164 F.3d 923, 928 (5th Cir. 1999),

4

considering all of the evidence in the record. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2110 (2000). We view the evidence and all reasonable inferences in favor of the non-movant; if reasonable persons could differ in their interpretation of the evidence, the motion should be denied. *Id.* Only if the facts and reasonable inferences are such that reasonable jurors could not reach a contrary verdict may the court properly grant such motion. *Id.*

Rio Petroleum moved, in the alternative, for new trial which the district court also denied. We affirm that denial unless the district court abused its discretion in refusing to find that the verdict is against the great weight of the evidence. *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998).

Rio Petroleum also complains that, although the district court granted its motion for remittitur, it erred in failing to remit the damages awarded by the jury to a nominal sum. We review the district court's order of remittitur for abuse of discretion. *See Denton v. Morgan*, 136 F.3d 1038, 1046 (5th Cir. 1998).

**B. Disparate Treatment Claim**

Brown alleged, and the jury found, that Rio Petroleum intentionally discriminated against her because of her race in the conditions of her employment. The district court instructed the jury that Brown "must prove that Rio Petroleum considered her race as a motivating factor in making one or more decisions concerning

5

the conditions of her employment."  The conditions of employment which Brown alleged arose from intentional racial discrimination included the assignment of job duties, a reprimand for making personal phone calls, and failure to expeditiously file a worker's compensation claim.

Brown had the burden of proving all the elements of a prima facie case of discrimination.  The district court instructed the jury that Brown must prove:

> 1. That she was denied or deprived of conditions of employment;
> 2.  That she was qualified to receive or retain the conditions of employment denied; and
> 3.  That the conditions of employment she was denied were instead given to other similarly situated employees who were not members of her protected class (African-American); and
> 4.  That Plaintiff's race was a motivating factor in the decision to deny her the conditions of employment.

*See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

Rio Petroleum argues on appeal that Brown's evidence did not establish a prima facie case of disparate treatment concerning the delay in filing her worker's compensation claim.  That claim arose from an on-the-job injury Brown sustained in 1995, when she was involved in an automobile accident while running an errand for Rio Petroleum.  Brown testified that she reported the injury to her supervisors, who advised her to contact the auto insurance company rather than filing a workers' compensation claim.  Brown raised the issue again in September 1996, during her termination interview, after which the claim was promptly filed.  Rio Petroleum points out

6

that the record contains no evidence that Brown's worker's compensation claim was treated differently than claims by similarly situated non-minority co-workers. The trial testimony established only that worker's compensation claims by injured "pumpers" were generally prepared and filed within a day. The pumpers were not office workers and therefore not similarly situated to Brown. Further, there was no evidence identifying the race of any injured pumper. The record supports Rio Petroleum's contentions on both counts. That is, Brown did not proffer evidence that the pumpers were similarly situated – in fact, there is undisputed evidence that they were not similarly situated – nor that they were not African-Americans.

Rio Petroleum next argues that Brown's claim regarding personal use of the phone did not involve actionable conduct on the part of Rio Petroleum. Brown testified that, while other non-African-American clerical personnel were allowed personal phone calls at work, she was singled out to be chastised for personal phone use. Rio Petroleum contends that when Brown's supervisor counseled her about excessive personal phone use during a performance evaluation, it was not an employment action rising to the level of Title VII scrutiny. Similarly, Rio Petroleum argues that there was no evidence that the reassignment of job duties resulted in any "detriment" to Brown's job and therefore was not an actionable employment decision.

We must first decide if Brown's allegations amount to

7

discrimination with respect to the conditions of her employment, as that term is used in 42 U.S.C. § 2000e-2(a)(1). Appellant's contention that Brown's claims do not raise viable claims of discrimination under Title VII is bottomed on language and reasoning from cases involving retaliation claims under § 2000e-3(a). In that context, we have held that Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions. *See, e.g., Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995). We mentioned as examples of ultimate employment decisions hiring, granting leave, discharging, promoting, and compensating an employee. *Id.* Appellant's argument in this regard fails because the retaliation jurisprudence they rely on is not on point; this appeal does not concern a retaliation claim. Rather, Brown prevailed at trial on her allegation that the conditions of her employment had been discriminatorily altered. Brown contends, and Rio Petroleum conceded at oral argument, that Title VII makes it unlawful to discriminate against an individual with regard to the conditions of employment whether or not an employer has made an ultimate employment decision on the basis of race. Verbal intimidation, ridicule, and insults may alone be sufficiently severe or pervasive to alter the conditions of employment and violate Title VII. *See DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995), *citing*

8

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993). Brown's allegations that her job duties were reassigned in a discriminatory manner and that she was denied the same use of the telephone for personal calls allowed to non-African-American employees, taken as a whole, state a viable Title VII claim of discrimination with regard to the conditions of her employment. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)(holding that a Title VII claimant can prove her claim by establishing a tangible employment action, that is, an employment action which "constitutes a significant change in employment stauts, such as hiring, firing, failing to promote, *reassignment with significantly different responsibilities*, or a decision causing a significant change in benefits."(emphsis added))

Next we must determine whether the district court erred in concluding that Brown established a prima facie case of discrimination. Specifically, Rio Petroleum contends that there is no evidence from which the jury could conclude that Brown was qualified to perform the job duties that were reassigned to other employees. We address this issue along with Rio Petroleum's parallel argument: its proffered non-discriminatory reason for reassigning Brown's job duties is that Brown was "not adequately performing her job duties."

First, Rio Petroleum transferred the responsibility of completing the Texas Railroad Commission reports to a Caucasian

9

employee hired after Brown.  Brown prepared and filed the reports for approximately two years from the time she was initially hired. In an effort to establish that Brown was not qualified to perform that part of her job, Rio Petroleum relied on evidence that Brown made errors on nineteen of the reports that she prepared.  However, the evidence did not show that the errors were serious or that, in order to be qualified for the job, one must produce error-free reports.  Brown's training consisted only of a supervisor showing her how to do the reports for the first two or three months.  Based on her supervisors' explicit assessment that she was satisfactorily performing this function, Rio Petroleum gave her a raise of $50.00 a month and additional responsibility.  Over time, as she mastered her assigned tasks, Rio Petroleum added responsibility for division orders, geology files, and some accounting functions. Viewing this evidence in the light most favorable to Brown, a rational jury could have concluded that Brown was qualified for these assignments, given that Rio Petroleum, rather than  disciplining her, providing her with additional training or indicating in any way that the quality of her work was unsatisfactory, continued to add to her job responsibilities.

In addition to transferring the Railroad Commission reports, Brown's responsibility for the land and well files was reassigned to a subsequently hired Caucasian clerical worker.  Brown's phone duties were decreased, but not eliminated, when Rio Petroleum installed an automated phone system.  In place of these various

10

duties, Brown was required to water trees, even though there was a sprinkler system in place. She was required to sweep and clean the basement and wash the windows, although Rio Petroleum had a janitorial service. She was also given the responsibility of caring for an infant when Rio Petroleum gave one of its other clerical workers permission to bring her baby to work. As a part of the transferred duties, Rio Petroleum moved Brown's workstation from the front reception area to a desk faced toward the wall in the corner of the file room, with no phone or typewriter. She was told that she had continued responsibility for receptionist duties. When she heard the phone ring, she had to get up and go to another employee's desk to answer it. When visitors arrived, she was summoned to the front to greet them and take care of any related receptionist duties.

Rio Petroleum cites evidence that Brown made errors in filing, in a bank deposit, in taking down phone messages and in distributing incoming faxes for the proposition that she was not qualified for the responsibilities that were transferred to other employees. While Brown did not deny making some errors, there is no evidence that Rio Petroleum considered Brown unqualified for receptionist duties. Indeed, Rio Petroleum even acknowledged in her termination letter that she performed that job satisfactorily. Finally, the jury was free to disbelieve Rio Petroleum's contention that the files were transferred because they were "a mess."

Based on the foregoing, we conclude that the record contained

11

sufficient evidence to support the jury verdict for Brown on her claims of disparate treatment on the basis of reassigned job duties. Brown was the only African-American employee in Rio Petroleum's office and the only one subjected to the demeaning employment conditions described at trial. Moreover, a jury was free to reject Rio Petroleum's contention that Brown was simply an incompetent employee, particularly in light of evidence that she was given raises and additional duties during the early days of her employment after her supervisor concluded that she had mastered her original responsibilities. Therefore a reasonable jury could have concluded that race was a cause for Rio Petroleum's treatment of Brown. In sum, the evidence was sufficient to establish Brown's prima facie case and to rebut Rio Petroleum's proffered non-discriminatory reasons for its decisions. *Reeves*, 530 U.S. 923 (2000). Therefore, the district court did not err in denying Rio Petroleum's motion for judgment as a matter of law.

## C. Challenge to the Amount of Damages Awarded by the Jury

Rio Petroleum and Walker[2] contend that the district court abused its discretion in failing to remit the jury award of damages to a nominal amount.

Rio Petroleum complains that the district court incorrectly stated in its remittitur order that "[trial] testimony established that Appellee was subjected to an offensive act of a sexual nature

---

[2]On appeal, Walker contests the damages awarded, but not his liability on Brown's assault and battery claim.

12

by Defendant Barrett W. Pierce, then President of Rio Petroleum, Inc." Rio Petroleum argues that they chose to leave the evidence of Pierce's misconduct unchallenged after the district court granted judgment as a matter of law on Brown's sexual harassment claim because that was the only claim to which it was relevant. The record does not support Rio Petroleum's argument. Brown specifically testified that Pierce singled her out for unwelcome sexual advances because she was African-American and that he did not subject her Caucasian co-workers to the same treatment because he believed that African-American females are "prostitutes" or "easy." Therefore, the district court did not err in crediting the uncontradicted evidence of Pierce's race-based sexual misconduct in evaluating the record for purposes of remittitur.

Rio Petroleum and Walker next contend that there is insufficient evidence to support the jury's award of damages to Brown for emotional distress because she did not show a sufficient causal connection between the statutory violation and the alleged injury. *See Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977). Further, defendants contend that the evidence did not show the specific nature and extent of the emotional harm caused by the violation. *See Carey v. Piphus*, 435 U.S. 247, 255-56 (1978).

In proving mental damages a claimant's testimony alone may not be sufficient to support anything more than a nominal damage award. *Brady v. Fort Bend County*, 145 F.3d 691, 718 (5th Cir. 1998). Corroborating testimony or medical or psychological evidence may be

13

necessary to meet the specificity requirements for establishing emotional distress damages. *Id.* "Emotional harm may manifest itself, for example, as sleeplessness, anxiety, stress, depression, marital strain,[3] humiliation, emotional distress, loss of self esteem, excessive fatigue, or a nervous breakdown." *Id.* "Physical manifestations of emotional harm may consist of ulcers, gastrointestinal disorders, hair loss or headaches." *Id.* Brown's testimony included her subjective emotional responses to the various incidents, as well as a description of her inability to trust or have any kind of intimacy with any men as a result of her ordeal. She testified that she took classes to deal with the stress. Brown's two grown daughters also testified, corroborating and expanding the evidence that Brown's work at Rio Petroleum resulted in stress, weight loss, graying hair and anxiety. In addition, the jury was able to observe Brown when she broke down on the witness stand while testifying about the mail-drop assaults. Brown testified that Walker would call out to her from an upper balcony, and when she looked up, he would throw the mail down on her, calling out "air mail," laughing and hitting her in the face. This activity continued, even after she specifically asked him to stop. She testified that it was degrading, especially on the occasions when he did it in front of strangers or in front of her

---

[3]Brown's marriage ended in divorce during her employment at Rio Petroleum. However, because she did not attribute her marital stress to her problems at work, we do not consider that in determining the sufficiency of the evidence on damages.

14

daughter.  We conclude that the evidence in this record supports the jury's award of compensatory and punitive damages based on Rio Petroleum's intentional discrimination in violation of Title VII and the assault and battery by Walker.

CONCLUSION

Based on the foregoing, we affirm the judgment for Brown.

AFFIRMED.