# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 4, 2025

Lyle W. Cayce
Clerk

No. 24-20492

_____

Mark Hernandez,

*Plaintiff—Appellee*,

*versus*

Manuel Poveda, Jr.; Edgar E. Razo,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-2856

_____

Before Wiener, Willett, and Ho, *Circuit Judges*.

Per Curiam:[*]

Defendants-Appellants Manuel Poveda, Jr., and Edgar Razo appeal the district court's final judgment against them and several of its evidentiary rulings at trial. For the reasons stated below, we AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

## I.     Background

From August 10, 2015, to July 8, 2021, Plaintiff-Appellee Mark Hernandez was incarcerated in the Texas Department of Criminal Justice (TDCJ) prison system. In 2018, Hernandez filed a *pro se* 42 U.S.C. § 1983 lawsuit against three TDCJ corrections officers, Brady (Cullen) Preischel, Manuel Poveda, Jr. and Edgar E. Razo, alleging use of excessive force.[1] Hernandez alleged that Preischel, Poveda, and Razo attacked and beat him on a November afternoon in 2016 (the Incident). a result of the Incident, Hernandez was transferred to a local hospital where he received treatment for injuries to his head, face, back, and legs.

After a delay in the case,[2] the district court appointed pro bono counsel for Hernandez, and service was completed on Preischel and Razo, who both also filed answers. After multiple attempts to serve Poveda personally at his residence, Hernandez effected substitute service by nailing the summons and complaint on Poveda's apartment door. Poveda never filed an answer or timely appeared.

In March 2024, Hernandez filed a request for the district clerk's entry of a default judgment against Poveda. The court granted that request and ordered the clerk to enter the default, which was later issued against Poveda. On June 14, 2024, Hernandez filed a motion for default judgment against Poveda, seeking over $1 million in compensatory damages. The district court ordered Hernandez to send the motion to Poveda's last known address and

---

[1] As noted by the parties, even though named as a defendant in Hernandez's original complaint, Preischel was not found liable by the jury at trial and is therefore not a Defendant-Appellant in this appeal. Also, the trial record refers to Brady Cullen as "Preischel" because of a name change that took place after the incident at issue here occurred.  He is referred to as Preischel in this opinion.

[2] This delay resulted from the defendants no longer working at TDCJ.

ordered Poveda to answer within 14 days. Additionally, the court set September 17, 2024, as the trial date against Razo and Preischel.

Less than two weeks before trial, Poveda attempted to file an answer to Hernandez's complaint and a motion to set aside the default judgment. Hernandez then filed a motion to strike Poveda's answer. The court held a conference in which it (1) denied Poveda's motion to set aside; (2) granted Hernandez's motion to strike Poveda's answer; and (3) informed Hernandez that he could reurge his motion for default judgment against Poveda at the conclusion of trial.

A four-day trial began on September 17, 2024, for the claims against Preischel and Razo. After deliberations, the jury found only Razo liable and awarded Hernandez $780,000 in compensatory damages for the injuries he sustained from Razo's use of force. Hernandez then filed a supplemental motion for default judgment against Poveda, which the district court granted after a hearing on the matter. It entered a Final Judgment by default for $800,000 against Poveda. Additionally, Hernandez was awarded attorneys' fees, costs associated with the default, and post-judgment interest. Razo and Poveda timely appealed.

On appeal, Defendants-Appellants ask the panel to consider whether the district court erred when it (1) awarded Hernandez an $800,000 default judgment against Poveda; (2) entered a final judgment against Razo for $780,000; and (3) made certain evidentiary rulings throughout trial.

## II.   The District Court Did Not Err When It Entered a Default Judgment Against Poveda for $800,000.

This court reviews the district court's entry of default judgment and refusal to set aside a default judgment for abuse of discretion. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 495 (5th Cir. 2015). Notably,

"any factual determinations underlying that decision, including a finding of willful default, are reviewed for clear error." *Id.* (citation modified).

Poveda claims that the district court abused its discretion by awarding Hernandez $800,000 in a default judgment against him for two reasons: (1) the jury award compensated Hernandez for all the injuries he sustained from the Incident, and (2) the amount may not exceed that which Hernandez demanded in the pleadings, which was $50,000. We address each claim in turn.

Poveda first claims (1) the jury award compensated Hernandez for all the injuries he sustained from the Incident and (2) any amount awarded pursuant to the default judgment gives Hernandez a double recovery. avers that the Jury Charge instructed the jury to consider him as one of the defendants in the case, so that it "should consider and award Hernandez for all of his injuries—not just those he sustained from Razo." He claims that the jury then "awarded what it found to be fair and reasonable compensation for the damages [Hernandez] sustained from the use of force" and that "Hernandez has been fully compensated." Any additional award of damages, he avers, would amount to double recovery. We conclude that Poveda is mistaken.

A review of the record reveals that not only did the district court explicitly instruct the jury to assess damages against only Preischel or Razo, but the jury was also fully aware that they were not to consider Poveda's role in the Incident when deliberating. For instance, while Poveda is named as a defendant in the case generally under the stipulations section of the Jury Charges, every other reference to the "defendants" identifies only Preischel and Razo. And, during deliberations, the jury asked the district court why Poveda was not a defendant in the trial and the court responded that "Poveda is a defendant in this case but he is not a part of this trial."

Poveda also contends that Question No. 4 on the Jury Verdict[3] instructed the jury to take into consideration all injuries sustained by Hernandez by all the defendants, as opposed to Razo only. We reject this reading because, taking the four Jury Questions together reveals that the jury could have only reached Question No. 4 by answering Questions Nos. 1 to 3—which make specific references to Razo and Preischel as the only defendants that the jury should consider when reaching its decision. For example, Question No. 1 states: "Do you find by a preponderance of the evidence that on November 28, 2016, Defendant(s) used excessive force against Plaintiff Hernandez?" It then provides a blank space next to each of the two listed defendants—Preischel and Razo—for the jury to write "Yes" or "No." Below that, it states: "If you answered 'Yes' for any Defendant in Question No. 1, proceed to Question No. 2 and answer as to that/those Defendant(s). If you answered 'No' for both Defendants in Question No.1, then do not answer the next question and the foreperson should initial and date the last page." The instructions for Question Nos. 2 and 3 look almost identical to that of Question No. 1, except that the initial question is different.[4] We also note that the bottom instruction for all three questions expressly states "both Defendants," which again tells the jurors that, when reaching their verdict, they should only consider Preischel and Razo's actions towards Hernandez, and not Poveda's too. Accordingly, we find that the jury did not consider Poveda's conduct when reaching its verdict. Because the

---

[3] Question No. 4 asked the jury "What sum of money, if any, would fairly and reasonably compensate Plaintiff Hernandez for the damages he suffered or is reasonably likely to suffer in the future as a result of Defendant(s)' violations of his constitutionally protected rights?"

[4] Question No. 2 asks the jury: "Do you find by a preponderance of the evidence that plaintiff Hernandez suffered some harm as a result of Defendant(s)' use of force? Question No. 3 asks the jury "Do you find that the actions of Defendant(s) were objectively unreasonable in light of the facts and circumstances?"

jury's verdict did not compensate Hernandez for damages caused by Poveda, we find that the district court's award against Poveda does not amount to double recovery.

Poveda next contends that Federal Rule of Civil Procedure 54(c) limits the district court's damages award against him because Hernandez's live pleading demands $50,000. Poveda's reading of Hernandez's live pleadings, however, neglects to include that Hernandez also requested legal and medical expenses in addition to $50,000.

Federal Rules of Civil Procedure 54 and 55 govern default judgments. Rule 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). "This limitation ensures that defendants have notice of the specific consequences of default so they can make informed decisions about whether to appear and defend." Steven S. Gensler, *Federal Rules of Civil Procedure: Rules and Commentary* 55:18 (2025).

Rule 55 provides the parameters for how a default judgment award may be entered. FED. R. CIV. P. 55. A clerk may enter a default judgment if the plaintiff's claim is for a sum certain or an amount that can be made certain by computation. FED. R. CIV. P. 55(b)(1); *Richardson v. Salvation Army, S. Territory, USA*, 161 F.3d 7 (5th Cir. 1998) (unpublished) (per curiam). In all other instances, the district court is required to enter the judgment. FED. R. CIV. P. 55(b)(2). The rule further provides that a district court may conduct hearings "to enter or effectuate judgment" when it needs to "conduct an accounting" or "determine the amount of damages." In other words, unless the damages amount is liquidated or easily computable, the court cannot enter a default judgment without first holding a hearing. *Richardson*, 161 F.3d at 7; *see also James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)("[U]nliquidated damages normally are not awarded without

an evidentiary hearing."); *United Artists Corp. v Freeman,* 605 F.2d 854, 857 (5th Cir. 1979) (holding that a default judgment "may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation") (per curiam).

We disagree with Poveda's claim that the record does not support the district court's $800,000 default judgment award against him. Although Hernandez requested $50,000 in compensatory damages in his complaint, he also requested legal and medical expenses. To aid the court in determining the amount, Hernandez filed a detailed motion for default judgment, explaining why he sought $1,027,070 for his medical expenses—based on his medical expert Dr. Anigbogu's assessment of Hernandez—and he attached supporting documents to that motion. Despite previously appearing in the case, Poveda did not file a timely opposition. As permitted by Rule 55(b)(2), the district court held a hearing to "effectuate judgment" because it needed to "determine the amount of damages." FED. R. CIV. P. 55(b). Poveda attended that hearing and orally opposed the motion and the amount of damages. In a written opinion following the hearing, the district court "carefully considered all elements of damages requested against Poveda," and awarded damages against Poveda in the amount of $800,000.

The district court did exactly what the law requires. In essence, Poveda is asking us to hold that the district court was strictly limited to the $50,000 Hernandez prayed for in his complaint. But the sum of his medical and legal expenses was not certain, and to limit the district court to the stated $50,000 would prohibit it from considering the additional evidence presented by the parties under the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 55. We therefore hold that the district court did not err when it entered an $800,000 default judgment against Poveda.

### III.    The Jury Award Against Razo is Not Grossly Disproportionate to the Injury Sustained.

We next address Razo's assertion that the jury's award of $780,000 against him is grossly disproportionate to the injury that Hernandez sustained. Razo first contends that the jury award is not supported by substantial evidence. He explains that Dr. Anigbogu testified at trial that Hernandez would need a life care plan consisting of psychiatric care, medication, potential surgery, and rehabilitation, which would cost $1,027,070. Razo claims, however, that Dr. Anigbogu developed this plan by reviewing Hernandez's medical records rather than personally seeing or treating Hernandez. And even though Hernandez complained about anxiety and post-traumatic stress disorder (PTSD), Razo contends that Hernandez presented no evidence at trial which supports that he developed these conditions from the use of force. Razo also asserts that Hernandez failed to present evidence of his disfigurement.

We give substantial deference to jury verdicts. *Johnston v. Ferrellgas, Inc.*, 96 F.4th 852, 859 (5th Cir. 2024). When the record reveals "any competent and substantial evidence fairly tending to support the verdict," we will not overturn the verdict "even if different inferences and conclusions also might be supported by the evidence." *Stewart v. Thigpen*, 730 F.2d 1002, 1007 (5th Cir. 1984). On the other hand, we will disturb the jury's award when it is "entirely disproportionate to the injury sustained." *See Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1427 (5th Cir. 1992) (internal citation and quotation omitted). An award is disproportionate to the injury sustained if it is so high "that it shows passion or prejudice or shocks the judicial conscience." *Pope v. Rollins Protectives Servs. Co.*, 703 F.2d 197, 207 (5th Cir. 1983).

A review of the record demonstrates that the jury's verdict was based on substantial evidence. At trial, Hernandez testified about his physical disfigurement, physical pain and suffering, mental anguish, and ongoing issues. Medical records, which corroborate his testimony, from his time in prison and after his release, were also admitted into evidence for the jury to consider. In accordance with the Federal Rules of Evidence and contrary to Razo's assertion, Dr. Anigbogu also testified that treatment for Hernandez's injuries could cost up to $861,049. Although Razo cross-examined Dr. Anigbogu, he failed to present his own expert to contradict Dr. Anigbogu. Taken together, we hold that there is competent and substantial evidence that supports the jury's $780,000 verdict against Razo. *Stewart*, 730 F.2d at 1007.

Alternatively, Razo contends that the Maximum Recovery Rule requires that we reduce the jury's award to $10,000. In applying the Maximum Recovery Rule, we lower the jury's award "to the maximum amount the jury could have properly awarded." *Denton v. Morgan*, 136 F.3d 1038, 1046 (5th Cir. 1998). To determine such amount, we "look[] to other published decisions from the relevant jurisdiction. . . involving comparable facts." *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 365 (5th Cir. 2019). In applying this rule, we "will decline to reduce damages where the amount awarded is not disproportionate to at least one factually similar case from the relevant jurisdiction." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 297 (5th Cir. 2019) (internal citations and quotations omitted). If there are no factually similar cases in the relevant jurisdiction, the Maximum Recovery Rule is not implicated. *Foradori v. Harris*, 523 F.3d 477, 505 (5th Cir. 2008).

The "relevant jurisdiction" for cases arising out of federal law means cases only decided by this circuit. *Cf. Salinas v. O'Neil*, 286 F.3d 827, 831 (5th Cir. 2002) ("The 'relevant jurisdiction' for federal discrimination law can only mean cases decided by this court."); *see also Delaughter v. Hatten*,

No. 1:14-cv-18, 2022 WL 2526433, at *20 (S.D. Miss. July 6, 2022) ("For purposes of the Maximum Recovery Rule, the relevant jurisdiction for a federal question case arising under 28 U.S.C. § 1983, is the Court of Appeals for the Fifth Circuit.").

Razo asks us to compare the facts of the underlying matter with nine other cases in which the court remitted the jury award in accordance with the maximum recovery rule. Seven of those cases are of no moment, as five of them are district court decisions[5] and two of them are unpublished Fifth Circuit opinions.[6] The eighth case, *Caldarera v. Eastern Airlines, Inc.*, is a published Fifth Circuit opinion but it involves wrongful-death claims arising out of a plane crash. 705 F.2d 778 (5th Cir. 1983). It is thus not "factually similar" to the case before us, which deals with injuries arising out of a § 1983 violation.

The last case that Razo asks us to consider is *Cowart v. Erwin*, 837 F.3d 444 (5th Cir. 2016). While Cowart may seem comparable at first glance, there are several differences that come forward when we take a closer look. There, a former prisoner, Cowart, filed a § 1983 lawsuit against correctional officers for using excessive force. *Id.* at 448. Cowart suffered injuries to his face, scalp, neck, and ear as a result of the excessive force. *Id.* at 450. After a four-day trial, the jury found one of the correctional officers liable and awarded the plaintiff $10,000 in compensatory damages. *Id.* When reaching that decision, the jury was instructed to consider damages only for physical pain

---

[5] These five cases are: (1) *Chacon v. Copeland*, 103 F. Supp. 3d 827 (W.D. Tex. 2015); (2) *Brooks v. Vannoy*, No. 19-846, 2023 WL 8543119 (M.D. La. Dec. 11, 2023); (3) *Ostrander v. Kosteck*, No. 6:13-cv-360 RP, 2017 U.S. Dist. LEXIS 164424 (W.D. Tex. Oct. 4, 2017); (4) *Bradley v. Hardy*, No. 23-446, 2024 U.S. Dist. LEXIS 126735 (M.D. La. 2024); and (5) *Recio v. Vasquez*, No. 5:18-00264, 2023 U.S. Dist. LEXIS 29280 (N.D. Tex.2023).

[6] These two cases are *Johnson v. Hankins*, 582 F. App'x 306 (5th Cir. 2014), and *Benoit v. Bordelon*, 596 F. App'x 264 (5th Cir. 2015).

and mental anguish, physical impairment, and loss of earning capacity. *Id.* at 455. On appeal, the defendant contended that the award was unsupported by the evidence. *Id.* We disagreed and held that the jury's award fell "within the range of permissible awards supported by the evidence in the case." *Id.* In doing so we noted that the jury reached its decision after considering the evidence presented at trial which included plaintiff and expert testimony, medical records, photographs, and witness statements. *Id.*

There are only two similarities between *Cowart* and the case before us. First, plaintiffs in both cases suffered injuries at the hands of correctional officers and filed a corresponding § 1983 lawsuit. Second, both juries considered plaintiff and expert testimony, medical records, photographs, and witness statements when reaching their conclusion.

On the other hand, there are several differences that lead us to conclude that the two cases do not share "comparable facts." For instance, the evidence presented in *Cowart* revealed that Cowart suffered neck, ear, and hand injuries. *Id.* at 450. Here, Hernandez complains of suffering a traumatic brain injury, back pain, as well as various mental health and social issues in addition to his face laceration. In *Cowart*, there was no mention of future medical expenses, whereas here, a portion of Dr. Anigbogu's testimony focused on Hernandez's future costs because of the extent of his injuries. *See id.* at 455. Regarding damages specifically, the jury in *Cowart* was only to consider Cowart's physical pain and impairment, mental anguish, and loss of earning capacity when determining its award. *Id.* In this case, the jury considered physical pain and impairment, mental anguish, loss of earning capacity, *and* future medical expenses that Hernandez will reasonably incur. Because of these contrasting facts, it follows that *Cowart* is not comparable to the present case for the purposes of the Maximum Recovery Rule.

Importantly, we never stated that $10,000 was the maximum amount that the jury could have properly awarded for Cowart's injuries, but we said that it was "not entirely disproportionate to the injury sustained." *Id.* (internal citation and quotation omitted). We even noted that juries have "especially broad leeway" when determining damages awards for pain and suffering because they "are to a large degree, not susceptible to monetary quantification." *See id.* (citation modified). In fact, we have never commented on what is the maximum amount that an individual plaintiff could be awarded for suffering injuries caused by correctional officers and the resulting costs. We need not do so now. *Cowart* is distinguishable from the present case for the stated reasons, and the Maximum Recovery Rule thus does not apply.

In sum, the jury's award against Razo was based on sufficient evidence, the Maximum Recovery Rule is not implicated, and we are required to give substantial deference to jury verdicts. We therefore affirm the jury's award of $780,000 against him.

## IV.    The District Court Did Not Abuse Its Discretion When Making Its Evidentiary Rulings.

Finally, Razo challenges four evidentiary rulings, claiming that we should vacate the jury's verdict and remand the matter for a new trial.

This court reviews preserved challenges to evidentiary rulings for abuse of discretion. *U.S. Bank Nat'l Ass'n, v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 430 (5th Cir. 2014). A trial court abuses its discretion if its decision is based on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Certain Underwriters at Lloyd's v. Axon Pressure Prod., Inc.*, 951 F.3d 248, 256 (5th Cir. 2020) (internal citation omitted). Evidentiary rulings are further subject to the harmless error doctrine. *Adams v. Memorial Hermann*, 973 F.3d 343, 349 (5th Cir. 2020). Thus, even if this

court concludes that the district court abused its discretion, that court's ruling "will be reversed only if it affected the substantial rights of the complaining party." *Id.* This means that an evidentiary ruling will only be reversed if it resulted in substantial prejudice. *Thomas v. Tex. Dep't of Crim. Just.*, 220 F.3d 389, 394 (5th Cir. 2000).

Razo contends that the district court erred when it (1) admitted two witness statements, (2) excluded a written statement by TDCJ Assistant Warden Smith, (3) precluded defense counsel from impeaching Hernandez with a pleading, and (4) excluded Smith from testifying at trial. We discuss each in turn.

Razo first claims the district court erred when it admitted the statements of two inmates who witnessed the Incident over his hearsay objections. One of the statement's alleged that Hernandez had a prior back injury that prevented him from placing his hands behind his back and that Razo and Preischel slammed him to the ground. The other statement provided that Hernandez had a medical problem and that Razo and Preischel punched Hernandez in the head. Razo fails to show that his substantial rights were affected by the inclusion of these two witness statements because the information contained in the statements reiterated evidence contained elsewhere in the record.

Razo next contends that the district court erred when it excluded a written statement by Smith because it prevented him from showing that Hernandez had an anger management problem and gave inconsistent statements. In addition to recording a conversation between Hernandez and Smith, the statement also included Smith's summarization of the incident based on his interviews with Razo, Preischel, and Poveda. Hernandez objected to the inclusion of this statement because it contained three levels of hearsay. Razo argued that Smith's statement satisfied the hearsay exceptions as to the statements made by Hernandez or, alternatively, that it

should be admitted into evidence under Federal Rule of Evidence 106 for completeness. The district court ultimately excluded the statement because it contained hearsay and summarized information Smith was receiving that was not identical to the words of the individuals who reported to him. In doing so, however, that court did allow Razo to impeach Hernandez with Smith's statement.

The district court did not abuse its discretion by excluding Smith's statement because Razo failed to address every layer of hearsay in the statement. While the business-records exception may address the outermost level of hearsay, and the party-opponent rule may clear any statement that Hernandez made to him, neither address the hearsay related to Smith's statement summarizing the statements of others. FED. R. EVID. 803(6); FED. R. EVID. 801(d)(2). Neither does the Rule of Completeness apply because the district court had already admitted several written statements from other correctional officers, including ones made by the defendants themselves. FED. R. EVID. 106 ("If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection."). Moreover, Razo fails to show how failure to admit Hernandez's statements substantially prejudiced him since he was permitted to use Smith's statement to impeach Hernandez.

On that note, Razo next contends that the district court erred when it precluded him from impeaching Hernandez with Hernandez's more definite statement. Razo attempted to impeach Hernandez's testimony that he was "provided with an opportunity to give a statement as part of the use-of-force report" and did not. This is because in his more definite statement, Hernandez expressed "No statement was afforded to me." The district court prohibited Razo from doing so under Federal Rule of Evidence 403 to avoid

the risk of confusing or misleading the jury. While Hernandez never provided a statement for the use-of-force report, he did testify at trial. Razo accordingly fails to demonstrate how Hernandez's minor inconsistent statement on a collateral issue substantially affected his rights, or that the court abused its discretion in its ruling.

Finally, Razo contends that the district court erred when it excluded Smith from testifying as a fact witness at trial. We conclude that the district court properly excluded Smith. The first time Razo named Smith as a fact witness was five weeks before trial. Razo neglected to disclose Smith's identity in his Rule 26 disclosures. And, when Razo submitted his responses to Hernandez's Rule 33 interrogatories, he failed to identify Smith as a potential fact witness. Therefore, under Federal Rule of Civil Procedure 37, the district court excluded Smith from testifying at trial. FED. R. CIV. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26, the party is not allowed to use that witness at a trial, unless the failure was substantially justified or is harmless.") (citation modified). Razo claims that Hernandez had "sufficient notice" that Smith could have been called to testify as a fact witness so that the lack of disclosure was "harmless." We disagree. The district court acted within its discretion when it prohibited Smith from testifying because Razo declined to follow the Federal Rules of Evidence. *See* FED. R. CIV. P. 37. Smith did not personally observe, and therefore had no first-hand knowledge of, the Incident. It follows that he would not have qualified as a fact witness to testify at trial under the Federal Rules of Evidence. *See* FED. R. EVID. 701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is (a) rationally based on the witness's perception.") (citation modified); *see also* FED. R. EVID. 701 advisory committee's note on proposed rules ("Limitation (a) is the familiar requirement of first-hand

knowledge or observation."). Accordingly, we will not reverse the district court's exclusion of Smith's trial testimony.

## V.

For the foregoing reasons, we AFFIRM the district court's final judgments against Razo and Poveda.